AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Attachment A, 2117 Wilma Road NW, Albuquerque, New Mexico 87104 | ) ) ) |

Case No.    22mr1640

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Albuquerque_____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. § 1324 | 1. Bringing in and harboring certain aliens |

The application is based on these facts:

see attached AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thomas Sanchez Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephonically sworn; transmitted by email_____ *(specify reliable electronic means)*.

Date: _____11/02/2022_____

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Honorable Jerry H.Ritter United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 2117 WILMA ROAD NW, ALBUQUERQUE, NEW MEXICO, 87104 | Case No. _____ **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas Sanchez, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     Your affiant is a Special Agent (SA) with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), in Albuquerque, New Mexico and has been employed as such since August of 2007. Your affiant is an investigative law enforcement officer of the United States and is empowered by law to conduct investigations and make arrests for felony offenses. Prior to your affiant's employment with Homeland Security Investigations, your affiant was a Border Patrol Agent with the United States Border Patrol since August 2002. Your affiant successfully completed twelve weeks of Criminal Investigator Training Program (CITP), and the Immigration and Customs Enforcement Special Agent Training (ICE-SAT) at the Federal Law Enforcement Training Center in Brunswick, Georgia. Your affiant holds a bachelor's degree in Criminal Justice. Your affiant has received extensive training and practical experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws, which include financial crimes, narcotics investigations, false and fraudulent use of identification documents and customs firearms export violations. Your affiant is authorized to investigate violations of Title 21 of United States Code. Your affiant has also acquired knowledge and

information about such offenses, and the various means and methods by which they are furthered from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees, and interviews of other knowledgeable individuals.

2.     I, your affiant, make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 2117 Wilma Road NW, Albuquerque, New Mexico, hereinafter "TARGET PREMISES" further described and depicted in Attachment A, for the things described in Attachment B.

3.     Throughout my law enforcement career, I have received training and gained experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and state laws including but not limited to: alien/human smuggling, human trafficking, the importation and distribution of controlled substances, bulk cash smuggling, firearms offenses, wire fraud, and conspiracy. I am authorized and presently assigned to investigate controlled substance violations, including violations of 21 U.S.C. § 841(a)(1), and violations of federal immigration law, including violations of 8 U.S.C. § 1324.

4.     In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

a.   Information provided by Special Agents ("SA"), Intelligence Research Specialists ("IRS") of the Department of Homeland Security, and other law enforcement officials ("Agents"), including oral and written reports that I have received directly or indirectly from said investigators and Sources of Information ("SOI's");

2

    b.   Results of physical surveillance conducted by agents during this investigation;

    c.   A review of telephone toll records and subscriber information;

    d.   Information derived from consensually recorded conversations;

    e.   A review of driver's license and automobile registration records;

    f.   A review of county property records;

    g.   Records from commercial databases; and

    h.   Records from the National Crime Information Center ("NCIC").

5.      Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6.      Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 8 U.S.C. § 1324 and 21 U.S.C. § 841, have been committed, are being committed, and will continue to be committed using the TARGET PREMISES.

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## RELEVANT CRIMINAL STATUTES

8.      I believe there is probable cause that the SUBJECTS have committed, are

committing, and will continue to commit offenses involving violations of:

> 8 U.S.C. § 1324 – Bringing in and harboring certain aliens;
>
> 21 U.S.C. § 841 – Distribution and possession with intent to distribute controlled
> substances;
>
> 21 U.S.C. § 846 – Conspiracy to distribute and possess with intent to distribute
> controlled substances.

## EVIDENCE SOUGHT DURING SEARCH

9.      Based on my training, experience, and participation in this and in similar

investigations, I believe that individuals involved in human smuggling of undocumented citizens

and controlled substances often conceal evidence of their activities in their residences and

businesses, or the residences of friends or relatives, and in surrounding areas to which they have

ready access such as garages, carports and outbuildings. Individuals involved in human smuggling

often cover entire windows of their residences and/or businesses with newspaper, blackout

curtains, or other means to prevent law enforcement and/or other witnesses from observing activity

inside of the location. They also conceal evidence in vehicles, including vehicles outside of their

residences and businesses, so that they have ready access to it and so that they can hide it from law

enforcement, including law enforcement officers executing search warrants at their residences or

businesses. Evidence also may be found in other areas to which a drug dealer or human smuggler

has ready access, such as rented storage areas and safety deposit boxes, or buried underground on

their property. This evidence, which is discussed in detail in the following paragraphs, includes

undocumented persons hiding in storage sheds or outbuildings, items typically found in possession

of undocumented persons such as fraudulent forms of identification, foreign currency, fraudulent

immigration documents, controlled substances, paraphernalia for weighing, packaging and distributing controlled substances or other contraband, records, documents, as well as evidence of drug transactions, human smuggling stash house locations, proceeds from drug sales, proceeds from human smuggling, and valuables obtained from proceeds.

10.     Human smugglers and drug traffickers often travel domestically and internationally to facilitate their human smuggling and drug trafficking. Evidence of foreign and domestic travel by persons engaged in illegal human smuggling and drug trafficking includes travel itineraries, airline tickets, receipts, passports, and visas. These items are stored by drug dealers and human smugglers on their person or in their business, residences and surrounding garages, outbuildings, carports and yards, the residences of relatives and in cars. Many of these items are accessible via the internet and can be downloaded and saved on a computer or digital media and on storage media. The term "digital media" includes personal digital assistants ("PDA's"), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones.  The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

11.     Human smugglers and drug traffickers often use storage facilities for drugs and other items related to human smuggling and trafficking that are at a location away from their residences and businesses. These off-site storage facilities are often commercial storage lockers and rooms. These locations are often used to store or hide drugs, contraband, money, fraudulent documents, and other valuables. Human smugglers and drug traffickers often keep documents and other items tending to show the existence and location of other stored drugs, contraband, money, fraudulent documents, and other valuables in areas such as storage facilities. Those documents and

5

other items include rental agreements, receipts, keys, notes, and maps specifically concerning off-site storage rooms, routes to additional "human stash houses" or "safe houses", lockers, and safety deposit boxes. This evidence may be found on their person or in their businesses, residences and surrounding garages, outbuildings, carports and yards, the residences of friends or relatives, and cars. This type of documentation can be stored on digital media and concealed virtually anywhere.

12.     Evidence of significant, unexplained income of drug dealers and human smugglers, or for the acquisition and concealment of money and assets of drug sales and/or their human smuggling efforts, can be found on banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail. These records can be maintained on paper, but also can be maintained as electronic data on computers and other digital media. The above items are typically kept by drug dealers and human smugglers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

13.     The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for human smuggling organizations and drug dealers. Information stored in electronic form on all of the above devices can provide evidence of human smuggling and/or drug trafficking. Human smugglers frequently use some or all of these devices to communicate with co-conspirators, customers, sources of

supply, and others involved in the drug and human smuggling trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. The content of these communications will often provide evidence of human smuggling or drug trafficking. Numbers stored on a telephone (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer or human smuggler is calling, and thus the identity of potential associates.

14.    Human smuggling organizations and drug traffickers often maintain firearms and ammunition on their person or in their homes, businesses, or cars to protect themselves, the undocumented persons they are smuggling into or across the United States, their associates, their drug supply, and their profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, firearms cleaning supplies, and instruction manuals and other documentation for firearms and ammunition. In your affiant's training and experience, I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for drug traffickers and human smugglers, who often keep firearms in close proximity to themselves and their contraband to protect them from other smugglers, traffickers, and law enforcement, and for intimidation purposes to assure those being smuggled comply with smugglers directives.

15.    Documents showing who owns, occupies, or controls the location being searched also show who is responsible for the items found on the premises, including contraband,

undocumented persons, and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts. These documents may also be produced on computers, downloaded from online accounts or scanned into digital format and stored on computers and related digital media.

16.     Based on my training and experience, particularly my experience relating to the investigation of properties such as the one listed in Attachment A, I know that it is common for drug traffickers and human smugglers in such areas to keep evidence of their crimes throughout their properties. I further know that all of the evidence described above could be located not only in the main residence, adjoining or adjacent building sharing the same property, but also in garages, outbuildings, storage containers, safes, safety deposit boxes, sheds, barns, vehicles, and even buried in the ground.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.     As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the property of the TARGET PREMISES in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and other storage media, such as computer hard drives, external hard drives, thumb drives, secure digital cards and other types of flash memory cards, compact disks and floppy disks, personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. For this reason, I submit that if a computer aided digital medium or storage medium is found on the property of the TARGET PREMISES, there is probable cause

to believe those records will be stored on that computer or storage medium. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Because several people appear to share the TARGET PREMISES, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

18.     *Necessity of seizing or copying entire computers or storage media*. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

19.     *The time required for an examination*. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take

weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

20.     *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

21.     *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

22.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying computers and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## INVESTIGATION

23.     On May 26, 2021, Homeland Security Investigations ("HSI"), Albuquerque, began a joint multi-agency/on-going initiative with the Bernalillo County Sheriff's Office ("BCSO") concerning the possession, manufacturing, and distribution of controlled substances, to wit., fentanyl, by Dominic BACA in and around the Albuquerque metropolitan area. BCSO executed a search warrant at TARGET PREMISES, an address associated with Laura MAESTAS-Baca. This resulted in the criminal arrest of Laura MAESTAS-Baca, the seizure of approximately 50 fentanyl pills (with an estimated weight of 5.665 grams), and the seizure of one firearm, ammunition and assorted firearms magazines. In addition to MAESTAS-Baca, BCSO encountered seventeen other subjects who were determined to be undocumented non-citizens: one citizen of Honduras, one citizen of Guatemala, seven citizens of Ecuador, and eight citizens of Mexico. A brief field interview with the seventeen subjects encountered in the residence determined that all were present in the United States without the necessary documents or status to enter or remain in the United States legally. Albuquerque Border Patrol Station responded, took custody of, and assisted with the transport of the seventeen subjects to the Border Patrol station for intake and further processing. MAESTAS-Baca was arrested, transported, and booked into the Prisoner Transport Center ('PTC") by BCSO. All evidence was seized and retained by BCSO.

24.     On August 31, 2021, HSI Albuquerque, in conjunction with Drug Enforcement Agency (DEA) Albuquerque, conducted the controlled purchase of 56.6g Fentanyl pills in a plastic ziplock bag from Laura MAESTAS-Baca. SAs Brown and Nielsen, DEA, conducted a field test that yielded a presumptive positive result for Fentanyl. The pills were seized under 21 USC 881(f)(1), 19 CFR 162.45a. During the transaction a HSI Undercover Agent (UCA) and Laura MAESTAS-Baca began to speak at length about several topics to include human smuggling and

future purchases of fentanyl. At one point, Laura MAESTAS-Baca stated that she currently had 20 Undocumented Non-Citizens at the TARGET PREMISES. Laura MAESTAS-Baca also advised the UCA that she hides the pills in a truck outside because the police always look in the house for drugs but not outside.

25.     On September 9, 2021, HSI in Albuquerque and the DEA conducted a Buy/Walk operation at 2550 Coors Blvd NW, Albuquerque, NM 87120. Agents, utilizing a HSI UCA, arranged for the purchase of approximately 500 fentanyl pills from Laura MAESTAS-Baca, a U.S. Citizen and identified fentanyl trafficker operating in Albuquerque, NM. Agents purchased the suspected fentanyl pills from MAESTAS and processed the evidence in accordance with established DEA Evidence procedures.

26.     On January 5, 2022, HSI Albuquerque, in conjunction with DEA Albuquerque, conducted the controlled purchase of 71.5g Fentanyl pills in a plastic ziplock bag from Laura MAESTAS-Baca. SA Belida, DEA, conducted a field test with SAs Meytin and Stickel, HSI, observing. That test yielded a presumptive positive result for Fentanyl. The pills were seized under 21 USC 881(f)(1), 19 CFR 162.45a.

27.     On February 10, 2022, HSI Albuquerque and DEA Albuquerque conducted the controlled purchase of 968.5g of Crystal Methamphetamine from Nathen Adrian ORTIZ, an associate of Eduardo Sarellano-Garcia, a.k.a. PADRINO. Laura MAESTAS-Baca was also present with ORTIZ during that transaction. DEA retained custody of the evidence which was seized under 21 USC 881(f)(1), 19 CFR 162.45a.

28.     HSI Special Agents Souder and Moulton interviewed a source of information (SOI) who stated there have been guns going in and out of the TARGET PREMISES and foot traffic in and out of the house. Vehicles drive into the driveway on the east side of the house and offload

groups of people ranging from two to ten persons. The SOI states Laura MAESTAS will often go out and "act like she's in charge" by ordering people around and telling them what to do.

29.     On August 11, 2022, while conducting surveillance at the TARGET PREMISIS, your affiant observed five individuals exit TARGET PREMISES and load into a Jeep Cherokee. Through training and experience, your affiant recognizes this pattern being consistent with undocumented non-citizens being smuggled within the United States.

30.     On October 25, 2022, New York HSI SA Matthew Doyle received information from the New York Police Department regarding an individual who had been smuggled into the United States. Santos FUENTES-Fuentes states his son, Edwin FUENTES-Perez, was smuggled into the United States from El Salvador for $10,000.00 USD. The father, Santos FUENTES-Fuentes, claims to have paid the full $10,000.00 before Edwin FUENTES-Perez left from El Salvador on September 2, 2022. On October 23, 2022, Santos FUENTES-Fuentes started receiving messages through WhatsApp from members of a smuggling organization in the United States requesting additional money. Santos FUENTES-Fuentes reached out to Ernesto ESCOBAR (ESCOBAR) who is part of the original smuggling organization and the individual to whom he paid the $10,000.00 for Edwin FUENTES-Perez to be smuggled into the United States from El Salvador. ESCOBAR stated his organization smuggled Edwin FUENTES-Perez into the United States and another organization possibly tricked him into going with a rival organization. The other smuggling organization requested payment and advised they had Edwin FUENTES-Perez.

31.     On October 28, 2022, Santos FUENTES-Fuentes sent the rival (Laura MAESTAS-Baca) smuggling organization $2,000.00 and the following day an additional $1,500.00 through a wire transfer from Quick Envios Central INC II to Karla Jazmin RODELO-Gonzalez in Juarez, Chihuahua, Mexico. Santos FUENTES-Fuentes was in communication with Laura LNU

(identified as Laura MAESTAS-Baca) via cell phone number 505-377-3788. HSI Investigative Research Specialist Armando Licerio confirmed this phone number belongs to Laura MAESTAS-Baca. Santos FUENTES-Fuentes asked Laura MAESTAS-Baca why his son has not been transported. Laura MAESTAS-Baca stated something was wrong with the payment and instructed Santos FUENTES-Fuentes to call her boss at 915-262-8040. Santos FUENTES-Fuentes texted Laura MAESTAS-Baca pictures of receipts of the money transactions. Laura MAESTAS-Baca instructed Santos FUENTES-Fuentes to pick up his son and provided the TARGET PREMISE address.

32.     On October 30, 2022, Laura MAESTAS-Baca allowed SANTOS FUENTES-Fuentes to speak with Edwin FUENTES-Perez using Laura MAESTAS-Baca's cell phone. While Santos FUENTES-Fuentes was speaking to Edwin FUENTES-Perez he heard Laura MAESTAS-Baca on another phone talking to her boss. Laura MAESTAS-Baca's boss instructed her not to let Edwin FUENTES-Perez go because Santos FUENTES-Fuentes had not paid. Santos FUENTES-Fuentes contacted the Albuquerque Police Department (APD) and advised them of the events that had occurred.

33.     On October 30, 2022, at approximately 4:30pm, APD officers made contact with Laura MAESTAS-Baca at TARGET PREMISES. Laura MAESTAS-Baca denied officers consent to search for individuals and stated nobody was there. While APD officers were on scene they spoke with an individual who stated there are always people moving in and out of the TARGET PREMISES.

34.     On October 30, 2022, Santos FUENTES-Fuentes received a text message from Laura MAESTAS-Baca in the Spanish language stating: "porque llama a la policia." Translated into the English language, the text read "why did you call the police." Santos FUENTES-Fuentes

14

stated he did not call the police and was waiting on her call. Laura MAESTAS-Baca did not answer any calls or text messages after that. Shortly after that, however, Santos FUENTES-Fuentes received a phone call from an unknow male from Mexican cellular number +52 656 495 4705. This unknow male told Santos FUENTES-Fuentes he messed up and, since he called the police, he was going to have to pay an additional $7,000.00. Santos FUENTES-Fuentes has not spoken with his son, Edwin FUENTES-Perez, since October 30, 2022.

35. On November 1, 2022, Santos FUENTES-Fuentes called the number (915-262-8040), previously provided by Laura MAESTAS-Baca. A male answered the phone and asked Santos FUENTES-Fuentes why he called the police. The unknown male said he would find out what happened and call Santos FUENTES-Fuentes back. A short time later the unknown male called Santos FUENTES-Fuentes back and advised him to provide proof of payment, Santos FUENTES-Fuentes texted pictures of the receipts of the money transactions. The unknown male stated he had Edwin FUENTES-Perez and identified his son by telling Santos FUENTES-Fuentes his son's name.

36. On November 1, 2022, 915-262-8040 pinged in several areas throughout Albuquerque, New Mexico to include a ping close to Target Premises.

## CONCLUSION

Based on the information and facts set forth in this affidavit, I believe the occupants of the TARGET PREMISES are in violation of Title 8 United States Code, Section 1324, Title 21 United States Code, Sections 841 and 846, and Title 18 United States Code, and are using the TARGET PREMISES in furtherance of these crimes.

Agents have observed activity consistent with human smuggling, person(s) in possession

of firearms while human smuggling activity is taking place, and counter surveillance activity associated with drug and human smuggling. Additionally, agents have made several Fentanyl purchases from Laura MAESTAS-Baca with the use of a HSI UCA. Lastly, different vehicles constantly arriving and departing TARGET PREMISES is consistent with drug trafficking and human smuggling. This specific activity is consistent with criminal activity closely associated with drug trafficking and human smuggling. Considering the facts set forth in this affidavit, there is probable cause to believe violations of Title 8, United States Code, Section 1324, Title 21, United States Code, Section 841 and 846, and Title 18, United States Code, Section 922, have been committed, are being committed, and will continue to be committed by the occupants of the TARGET PREMISES. I submit there is probable cause to believe the occupants will continue utilizing the TARGET PREMISES in furtherance of human smuggling, drug trafficking, and firearms related offenses.

Thus, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the said premises, to include each residence on the entire parcel, its surrounding storage sheds, vehicles, storage structures, detached garages, and outbuildings on the property described in ATTACHMENT A, to search for, seize, and examine the items and/or assets set forth above and in ATTACHMENT B.

AUSA Blake Nichols reviewed and approved this affidavit.

Respectfully submitted,

Thomas Sanchez
Special Agent, HSI

Electronically submitted and telephonically sworn on November 2, 2022:


HONORABLE     Jerry H. Ritter
UNITED STATES MAGISTRATE JUDGE

Attachment A
Premises to Be Searched

**2117 Wilma Road NW, Albuquerque, New Mexico 87104 to include any and all vehicles located at the above listed location.**

The premises to be searched is located at the end of the cul-de-sac on Wilma Road, the residence is located on the north side of the road and has an irrigation ditch to the east. The front door is a black security screen door which faces to the south. To the right of the door, the numbers 2117 are vertically displayed. The residence is single story with light gray stucco, light grey metal roof, black wrought iron security fence, and black wrought iron security windows. It has a single car garage with two small windows in the center of the garage door. A photo is included below.



## ATTACHMENT B

## ITEMS TO BE SEARCHED AND/OR SEIZED

1. Illegally smuggled or undocumented persons.

2. Large amounts of currency, financial instruments, Western Union and/or other wire transfer receipts and materials, precious metals, jewelry and other items of value and/or proceeds of human smuggling.

3. Any and all lists of human smuggling payees, lists of persons to be smuggled or lists of persons who have been smuggled illegally into the United States, travel records, dealers lists, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers, dealers or other persons to be illegally smuggled, and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, firearms or other items of value supplied or received or intended to pay for human smuggling efforts.

4. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

5. Cellular phones, telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other communication devices used by them and/or their human smuggling associates.

6. Messages, notes, correspondence, and/or communications exchanged between human smuggling co-conspirators, persons smuggled illegally into the United States, or those paying for smuggling efforts.

7. Books, records, receipts, diaries, notes, ledgers, airline tickets, bus tickets, train tickets, cashier's checks, money orders and other papers relating to the transportation of illegally smuggled or undocumented persons.

8.  Firearms and ammunition, including handguns, rifles, shotguns and automatic weapons.

9.  Any and all computers, digital media, and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).